1
2
3
4
5
6
7
8              UNITED STATES DISTRICT COURT
9          FOR THE EASTERN DISTRICT OF CALIFORNIA
10

11   ROSA ISELA RIVERA,                    Case No.  1:23-cv-00900-JLT-BAM

12                  Plaintiff,
                                           **FINDINGS AND RECOMMENDATIONS**
13        v.                               **REGARDING PLAINTIFF'S MOTION FOR**
                                           **SUMMARY JUDGMENT**
14   MARTIN O'MALLEY, Commissioner of
     Social Security,[1]                   (Docs. 20, 24)
15
                                           FOURTEEN-DAY DEADLINE
16                  Defendant.

17

18              **Findings and Recommendations**

19                     **INTRODUCTION**

20        Plaintiff Rosa Isela Rivera ("Plaintiff") seeks judicial review of a final decision of the

21   Commissioner of Social Security ("Commissioner") denying her application for supplemental security

22   income under Title XVI of the Social Security Act.  The matter is currently before the Court on

23   Plaintiff's motion for summary judgment and the parties' briefs, which were submitted, without oral

24   argument, to Magistrate Judge Barbara A. McAuliffe for findings and recommendations.

25

26

27   [1] Martin O'Malley became the Commissioner of Social Security on December 20, 2023.  Pursuant to Rule 25(d)
     of the Federal Rules of Civil Procedure, Martin O'Malley is substituted as the defendant in this suit.
28

                                           1

Having considered the briefing and record in this matter, the Court finds that the decision of the Administrative Law Judge ("ALJ") is supported by substantial evidence in the record as a whole and based upon proper legal standards. Accordingly, this Court will recommend denying Plaintiff's motion for summary judgment and granting the Commissioner's request affirm the agency's determination to deny benefits.

## FACTS AND PRIOR PROCEEDINGS

Plaintiff filed an application for supplemental security income on July 27, 2020. AR 180-90.[2] Plaintiff alleged that she became disabled on July 20, 2020, due to anxiety, depression, and pain in the head and right shoulder. AR 84, 204. Plaintiff's application was denied initially and on reconsideration. AR 84-88, 103-07. Subsequently, Plaintiff requested a hearing before an ALJ. Following a hearing, ALJ Nancy M. Stewart issued an order denying benefits on August 24, 2022. AR 12-26, 31-50. Thereafter, Plaintiff sought review of the decision, which the Appeals Council denied, making ALJ's decision the Commissioner's final decision. AR 1-5. This appeal followed.

### Relevant Hearing Testimony

ALJ Stewart held a telephonic hearing on May 10, 2022. Plaintiff appeared with her attorney, Nicholas Martinez, from the firm of Pena & Bromberg. Lorain Hyatt, an impartial vocational expert, also appeared. AR 33-34.

At the outset of the hearing, Plaintiff's attorney confirmed that the record was complete. AR 34. Additionally, Plaintiff's alleged onset date was amended to July 24, 2020. AR 34-35.

In response to questions from her attorney, Plaintiff testified that she lives with her husband and kids. She has four children, ages 5 to 20. Plaintiff's spouse works full-time. Her daughter-in-law lives with her and helps with the kids. Plaintiff does not have a driver's license. She does not take public transit. AR 37-39.

Plaintiff confirmed that she is seeing a psychiatrist and taking some medications for her mental issues. She does not feel the medication is helping, but she does not have side effects from it. She has

---

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

2

difficulty sleeping.  Her anxiety is constant, worse when she is in public or talks to new people.  She no longer hears voices now that she has medication.  AR 39-41.

Plaintiff testified that she is not capable of keeping up with household chores, such as cooking or preparing meals.  When she feels good, she cooks or mops.  She goes grocery shopping with her husband.  She does not have any problems taking care of her personal hygiene.  AR 41-42.

In response to questions from the ALJ, Plaintiff testified that her daughter-in-law is her oldest son's wife and has a 3-month-old baby.  When asked if her daughter-in-law is taking care of a 3-month-old baby, as well as Plaintiff's children, Plaintiff also testified that her 13-year-old helps a lot with the kids.  When Plaintiff is "doing good," she takes care of them.  AR 43-44.

Following Plaintiff's testimony, the ALJ elicited testimony from the VE.  The ALJ asked the VE hypothetical questions.  For the first hypothetical, the ALJ asked the VE to consider someone of the same age, education and work experience as Plaintiff with the following limitations:  lifting and carrying no more than 50 pounds occasionally, 25 pounds frequently, pushing and pulling within those weight limits, standing and walking 6 hours out of an 8-hour workday, sitting for 6 hours out of an 8-hour workday, but would be able to rest or relax, stand and stretch every 2 hours for 10 to 15 minutes, falling within the normal breaks and lunches, frequent right overhead reaching, no limits to reaching at shoulder level, simple, routine, tasks in a static work environment that stays the same from day-to-day in regards to the tasks to be done and the physical surroundings, occasional tasks that require teamwork, occasional contact with the public is okay, but should not need any interaction with the public in any way to complete a work tasks.  AR 47-48.  The VE testified that there would be medium work available, such as hand packager, harvest worker, and vehicle cleaner.  AR 48.  The VE also testified that a person would be unemployable if she could have no contact with the public, no contact with coworkers, and an inability to take instructions to the point where the person would be unable to be productive more than an hour or two a day on a regular basis.  AR 48-48.  The VE further testified that a person would be unable to maintain any competitive work if they had two or more absences a month on a regular basis.  AR 48.

1    For the next hypothetical, Plaintiff's attorney asked the VE to consider the first hypothetical

2 and add a further limitation to being off-task 15% of the workday due to psychiatric symptoms.  The

3 VE testified that such a person could not perform medium work or any other work.  AR 49.

4    **Medical Record**

5    The relevant medical record was reviewed by the Court and will be referenced below as

6 necessary to this Court's decision.

7    **The ALJ's Decision**

8    Using the Social Security Administration's five-step sequential evaluation process, the ALJ

9 determined that Plaintiff was not disabled under the Social Security Act.  AR 15-26.  Specifically, the

10 ALJ determined that Plaintiff had not engaged in substantial activity since July 24, 2020, the

11 application date.  AR 17.  The ALJ identified the following severe impairments:  right upper extremity

12 disorder with pain, obesity, anemia (chronic), anxiety, and depression.  AR 17-18.  The ALJ

13 determined that Plaintiff did not have an impairment or combination of impairments that met or

14 medically equaled any of the listed impairments.  AR 19-20.

15    Based on a review of the entire record, the ALJ found that Plaintiff retained the residual

16 functional capacity ("RFC") to perform medium work.  Plaintiff could lift and carry 50 pounds

17 occasionally and 25 pounds frequently.  She could stand and/or walk six hours out of an eight-hour

18 workday.  She could sit for six hours out of an eight-hour workday.  She could rest, stand, or stretch

19 every two hours for 10-15 minutes falling within the normal breaks and lunch periods.  She could

20 frequently perform right upper extremity overhead reaching, but there were no limits to reaching at

21 shoulder level.  She could perform simple tasks in a work environment that stays the same from day-

22 to-day regarding the tasks to be performed as well as the physical surroundings.  She could

23 occasionally perform tasks that require teamwork, and could occasionally have contact with the

24 public, but should not be required to interact with the public in any way to complete a work task.  AR

25 20-24.  With this RFC, the ALJ found that there were jobs that existed in the national economy that

26 Plaintiff could perform, such as hand packager, harvest worker, and vehicle cleaner.  AR 24-25.  The

27 ALJ therefore concluded that Plaintiff had not been under a disability since July 24, 2020, the date the

28 application was filed.  AR 25.

4

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, this Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g., Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Commissioner applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Servs.*, 812 F.2d 509, 510 (9th Cir. 1987).

## REVIEW

In order to qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). A claimant must show that he or she has a physical or mental impairment of such severity that he or she is not only unable to do his or her previous work, but cannot, considering his or her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

**DISCUSSION**[3]

Plaintiff contends that the ALJ's RFC determination is not supported by substantial evidence because the ALJ failed in her duty to develop the record and obtain an opinion of Plaintiff's mental RFC. (Doc. 20 at 9.)  Plaintiff also contends that the ALJ failed to provide clear and convincing reasons for rejecting Plaintiff's subjective testimony.  (*Id.* at 2.)

**A.  Duty to Develop the Record**

To the extent Plaintiff challenges the record as incomplete, this issue is not properly preserved for appeal.  "[W]hen claimants are represented by counsel, they must raise all issues and evidence at their administrative hearings in order to preserve them on appeal." *Meanel v. Apfel*, 172 F.3d 1111, 1115 (9th Cir. 1999).  As the Commissioner points out, Plaintiff was represented by counsel at the administrative hearing and her counsel confirmed that the record was complete.  AR 34 ("ALJ:  Okay. And, Mr. Martinez, do you believe we have a complete record?  ATTY:  Yes, I consider the record complete.").  Because counsel confirmed that the record was complete, any challenge on that basis is waived.  *See Gonzalez v. Kijakazi*, No. 1:21-CV-01676-SKO, 2023 WL 6164086, at *5 (E.D. Cal. Sept. 21, 2023) ("Here, because counsel stated that the record was complete, the issue is not properly preserved for appeal."); *Karl v. Kijakazi*, No. 1:21-cv-01576-SKO, 2023 WL 3794334, at *4–5 (E.D. Cal. June 1, 2023) (finding issue not properly preserved for appeal where plaintiff represented by counsel at the administrative hearing who expressly stated the record was complete); *Smith v. Saul*, No. 1:19-cv-01085-SKO, 2020 WL 6305830, at *7 (E.D. Cal. Oct. 28, 2020) (finding issue not properly preserved for appeal where plaintiff represented by counsel at the administrative hearing and specifically stated that the record was complete).

Even if the issue had not been waived, Plaintiff has not demonstrated any error warranting remand.  Although Plaintiff argues that the ALJ erred by failing to obtain an opinion regarding Plaintiff's mental RFC from a psychological consultative examiner, a psychological medical expert, or Plaintiff's treating physicians, (Doc. 20 at 9), it is Plaintiff's burden to establish disability. *Terry v.*

---

[3] The parties are advised that this Court has carefully reviewed and considered all of the briefs, including arguments, points and authorities, declarations, and/or exhibits.  Any omission of a reference to any specific argument or brief is not to be construed that the Court did not consider the argument or brief.

*Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990); 42 U.S.C. § 423(d)(5)(A). ("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require."); 20 C.F.R. § 416.912(a) ("[Y]ou have to prove to us that you are ... disabled ...."); *Wagner v. Comm'r of Soc. Sec.*, No. 1:22-cv-01566-CDB, 2024 WL 1312214, at *9 (E.D. Cal. Mar. 27, 2024) (acknowledging plaintiff's burden to establish disability); *Sanchez v. Kijakazi*, No. 1:21-cv-00907-ADA-BAM, 2023 WL 4743018, at *5 (E.D. Cal. July 25, 2023), report and recommendation adopted, No. 1:21-cv-00907-ADA-BAM (SS), 2023 WL 5817583 (E.D. Cal. Sept. 7, 2023).

Plaintiff failed to submit any medical opinions from a treating or examining physician addressing her functional limitations.  Because it is Plaintiff's burden to present evidence of disability, the mere absence of an opinion from a treating or examining physician does not give rise to a duty to develop the record; rather, that duty is triggered only where there is an inadequacy or ambiguity. *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005); *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001) ("[a]n ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence."); *Wagner*, 2024 WL 1312214, at *9-10 (determining absence of opinion from treating or examining physician did not give rise to duty to develop record where record contained opinions of state agency medical consultants, plaintiff's testimony, and plaintiff's complete medical records); *Harrison*, 2021 WL 1173024, at *5-6 (finding absence of report from treating or examining source did not give rise to duty to develop the record where record contained opinions of state agency physicians and plaintiff's complete treatment records); *Alvarez v. Astrue*, No. 1:08-cv-01205-SMS, 2009 WL 2500492, at *10 (E.D. Cal. Aug. 14, 2009) (finding absence of report from treating physician did not give rise to a duty to develop the record where record contained opinions of the state agency physicians and plaintiff's complete treatment records).

In this instance, there is no indication that the record was ambiguous or inadequate to allow for proper evaluation. The record included Plaintiff's testimony and the prior administrative findings of the state agency physicians, both of which were summarized by the ALJ.  AR 21, 24.  And, as counsel confirmed at the hearing, the record included Plaintiff's complete treatment records.  AR 34. Absent

any inadequacy or ambiguity in the record, the ALJ had no duty to further develop the record.  *See*, *e.g.*, *Gonzalez*, 2023 WL 6164086, at *6 (finding ALJ had no duty to develop the record further where counsel conceded at the hearing that record contained plaintiff's complete treatment records and no gaps or inconsistencies were noted); *accord Findley v. Saul*, No. 1:18-cv-00341-BAM, 2019 WL 4072364, at *6 (E.D. Cal. Aug. 29, 2019) (finding ALJ not obligated to further develop the record where counsel stated at the hearing that the record was complete).

Plaintiff also argues that the ALJ impermissibly conducted a "lay review" of raw medical evidence in formulating Plaintiff's RFC.  (Doc. 20 at 11.)  An RFC "is the most [one] can still do despite [his or her] limitations" and it is "based on all the relevant evidence in [one's] case record," rather than a single medical opinion or piece of evidence. 20 C.F.R. § 416.945(a)(1) ("We will assess your residual functional capacity based on all of the relevant medical in your case record.").  Indeed, "[t]he RFC need not mirror a particular opinion; it is an assessment formulated by the ALJ based on all relevant evidence." *Ashlock v. Kijakazi*, No. 1:21-cv-01687-GSA, 2022 WL 2307594, at *3 (E.D. Cal. June 27, 2022); *see Gonzalez,* 2023 WL 6164086, at *6; *Mills v. Comm'r of Soc. Sec.*, No. 2:13-CV-0899-KJN, 2014 WL 4195012, at *4 n.8 (E.D. Cal. Aug. 22, 2014) ("[B]ecause it is the ALJ's responsibility to formulate an RFC that is based on the record *as a whole*, ... the RFC need not exactly match the opinion or findings of any particular medical source."); *accord  Macias v. O'Malley*, No. 1:22-cv-01283-JLT-SKO, 2024 WL 51352, at *7 (E.D. Cal. Jan. 4, 2024) (rejecting argument that ALJ's conclusion "must mirror one specific medical opinion"), report and recommendation adopted, No. 1:22-CV-1283 JLT SKO, 2024 WL 246173 (E.D. Cal. Jan. 23, 2024). "An ALJ is almost always tasked with performing some independent review [of] the medical evidence that was never considered by one of the state agency's [ ] physicians, and thereafter translating the same into an RFC ... this is indeed the ALJ's role." *Razaqi v. Kijakazi*, No. 1:20-cv-01705-GSA, 2022 WL 1460204, at *7 (E.D. Cal. May 9, 2022).

Here, the ALJ did not improperly substitute his own opinion for a medical opinion.  Rather, with respect to Plaintiff's mental limitations, the ALJ considered the prior administrative medical

1  findings of the state agency physicians, Dr. Sreeja Kadakkai and Dr. Norman Zukowsky.[4]   AR 24.

2  Both of the physicians reviewed Plaintiff's medical records and concluded that Plaintiff's mental

3  impairments were non-severe.   AR 24, 58-59, 72-74.   The ALJ found these opinions "only partially

4  persuasive," reasoning that the record supported little to no mental health treatment prior to December

5  21, 2021, but that Plaintiff reported more significant symptoms after December 2021.   AR 24.   Giving

6  Plaintiff every benefit of the doubt, after considering Plaintiff's testimony and statements, in

7  combination with the mental health clinical signs and findings, the ALJ identified moderate mental

8  limitations.   AR 24; *see also* AR 19 (assessing moderate limitations in understanding, remembering or

9  applying information, in interacting with others, and in concentrating, persisting, or maintaining pace).

10  The ALJ therefore limited Plaintiff to simple tasks in a static work environment with only occasional

11  teamwork or public contact to accommodate her claims of anxiety related to going out in public and

12  difficulty following instructions.   AR 24 ("I have considered the claimant's report of anxiety related to

13  going out in public as well as. . . difficulty with following written and spoken instructions.   The

14  adopted mental limits consider the objective evidence and supported symptoms.").

15          Plaintiff does not substantively challenge the ALJ's evaluation of the state agency physician

16  opinions, noting only that the ALJ ultimately rejected the non-severity findings.   (Doc. 20 at 11.)

17  Plaintiff instead complains that the state agency physicians only reviewed Plaintiff's psychological

18  records through July 29, 2020, and the ALJ "took it upon herself to review [the] raw medical records

19  dated after July 29, 2020."   (*Id.* at 9.)   Plaintiff contends that that ALJ failed in her heightened duty to

20  develop the record.   (*Id.* at 9, 11.)   The Court disagrees.

21          Although Plaintiff asserts that the state agency physicians did not review medical records dated

22  after July 29, 2020, the record reflects that Dr. Zukowsky reviewed medical records dated through at

23  least March 2021.   *See* AR 68 (reconsideration evidence from Dr. Lalaine L. Tiu received

24  03/26/2021); 71-72 (reconsideration analysis included records dated through 03/04/21; Dr. Zukowsky

25  confirmed review of case materials on reconsideration including "new files"); 380-81 (acknowledging

26

27  ──────────────
[4] Prior administrative medical findings are findings made by State agency medical and psychological
consultants at a prior level of review based on their review of the evidence in the record.   20 C.F.R. §
28  416.913(a)(5).

records sent from Dr. Tiu 03/26/2021); 378-413 (treatment records submitted 03/26/2021 from Dr. Tiu dated August 6, 2020 to March 17, 2021).  Moreover, the mere existence of medical records post-dating a state agency physician's review does not in and of itself trigger a duty to further develop the record. *See*, *e.g.*, *Charney v. Colvin*, No. CV 1-7080 JC, 2014 WL 1152961, at *7 (C.D. Cal. Mar. 21, 2014), aff'd, 647 F. App'x 762 (9th Cir. 2016) (finding that the ALJ did not err in relying on the opinions of state agency physicians that did not account for subsequent medical records where subsequent records were considered by the ALJ and were not inconsistent with RFC); *Smith*, 2020 WL 6305830, at *8 (concluding "updated opinion is not required simply because additional medical evidence is received after the State agency physicians had already reviewed Plaintiff's records."); *Ortiz v. Saul*, No. 1:17-cv-01611-BAM, 2019 WL 4298035, at *6  (E.D. Cal. Sept. 11, 2019) (indicating ALJ's consideration of the medical evidence post-dating state agency physician's opinion was within her province in determining plaintiff's RFC.  Indeed, "there is always some time lapse between a consultant's report and the ALJ hearing and decision, and the Social Security regulations impose no limit on such a gap in time." *Owen v. Saul*, 808 F. App'x 421, 423 (9th Cir. 2020).

The ALJ here evaluated the objective medical evidence after March 2021, which post-dated Dr. Zukowsky's review.  As the Commissioner notes, Exhibits 11F and 12F were the records not available to the State agency consultants.  The ALJ discussed those records in her decision.  *See* AR 22-24, citing Exs. 11F and 12F [AR 415-58].  The ALJ then interpreted these later treatment records, which showed increased mental symptoms, and formulated Plaintiff's RFC with greater limitations than those assessed by the state agency physicians.  *See Smith*, 2020 WL 6305830, at *9 (finding ALJ properly interpreted evidence post-dating state agency physicians' opinions, as charged to do, and formulated RFC); *Ortiz v. Saul*, 2019 WL 4298035, at *5-6 (rejecting argument that ALJ had a duty to develop the record where ALJ considered evidence post-dating the State agency consultants' review and assessed additional mental limitations based on the record as a whole).  While Plaintiff argues that the ALJ improperly interpreted the medical evidence, there is no indication that the ALJ made medical judgments based on any "raw" data  The ALJ instead considered the opinions of the state agency medical consultants, Plaintiff's testimony and statements, and treatment notes from Plaintiff's medical providers.  Further, Plaintiff does not identify any medical evidence that the ALJ failed to consider,

1  nor does she identify any additional functional limitations the ALJ failed to account for in the RFC

2  assessment.

3       For these reasons, the Court finds that the ALJ was not obligated to further develop the record.

4  **B.  Subjective Testimony**

5       Plaintiff contends that the ALJ committed harmful error by failing to provide the requisite clear

6  and convincing reasons to reject her severe psychiatric symptomology evidence.  (Doc. 20 at 14.)

7       In deciding whether to admit a claimant's subjective complaints, the ALJ must engage in a

8  two-step analysis. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014); *Batson v. Comm'r of Soc.*

9  *Sec. Admin.*, 359 F.3d 1190, 1196 (9th Cir. 2004).  First, the claimant must produce objective medical

10  evidence of his impairment that could reasonably be expected to produce some degree of the symptom

11  or pain alleged. *Garrison*, 759 F.3d at 1014. If the claimant satisfies the first step and there is no

12  evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of his

13  symptoms only by offering specific, clear and convincing reasons for doing so.  *Id.* at 1015.

14       Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably be

15  expected to cause some of the alleged symptoms, but discounted her statements concerning the

16  intensity, persistence and limiting effects of those symptoms.  AR 21.  The ALJ was therefore required

17  to provide specific, clear and convincing reasons for discounting Plaintiff's subjective complaints.

18       The Court finds that the ALJ provided clear and convincing reasons for discounting Plaintiff's

19  subjective complaints.  First, the ALJ determined that Plaintiff's statements regarding the limiting

20  effects of her symptoms were not entirely consistent with the objective medical evidence.  AR 21.

21  Although lack of supporting medical evidence cannot form the sole basis for discounting testimony, it

22  is a factor that the ALJ can consider. *See Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005).  For

23  example, the ALJ determined that the record supported little to no mental health treatment prior to

24  December 21, 2021.  AR 24.  In the opinion, the ALJ also noted that Plaintiff's mental status

25  examinations demonstrated generally unremarkable findings.  AR 19 ("The physical and mental

26  examinations throughout the record demonstrated generally unremarkable findings.").

27       Second, the ALJ considered that Plaintiff's treatment notes for depression and anxiety

28  supported that her symptoms were managed with conservative treatment of medication and counseling

11

that were effective in reducing her symptoms.  AR 24.  The effectiveness of medication or treatment is a relevant factor in determining the severity of a claimant's symptoms. 20 C.F.R. § 416.929(c)(3); *Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017) ("[E]vidence of medical treatment successfully relieving symptoms can undermine a claim of disability."); *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be effectively controlled with medication are not disabling for the purpose of determining eligibility for SSI benefits."); *accord Evans v. Comm'r of Soc. Sec.*, No. 2:22-cv-435-KJN, 2023 WL 3570083, at *10 (E.D. Cal. May 19, 2023) (concluding ALJ properly rejected plaintiff's severe symptom testimony based, in part, on findings that medication controlled some of her mental health symptoms).  Here, the ALJ discussed record evidence showing that Plaintiff's symptoms responded to treatment.  AR 22-23.  For example, in May 2020, Plaintiff reported she was sleeping well and able to relax with her new medications.  AR 22, citing AR 341.  The ALJ further noted that when Plaintiff briefly stopped taking her medication, her anxiety increased.  AR 22, citing AR 339.  By July 2020, when back on her medication for depression, Plaintiff reported it was working well.  AR 22, citing AR 337 ("She has been doing well with her Vibyrd 20 mg which even her husband noticed it."). In January 2021, Plaintiff  reported medication compliance and endorsed progress and improvement in her depression symptoms.  AR 22, citing AR 410 ("takes all her medicine daily and stated that she is doing well").  The ALJ also noted that Plaintiff stopped attending counseling, despite admitting that it was helpful. AR 21, citing AR 424 ("was doing counseling for a while which was helping but stopped").  After December 2021, Plaintiff's treatment notes indicated that her crying lessened, her mood was better than before, she was not as grumpy, felt more motivated, and the voices were controlled. AR 23, citing AR 430 ("Reports voices are controlled."); 434 ("Patient reports mood is 'okay' better than before.  She reports being not as grumpy and feels motivated"); 450 ("Pt reports she is not crying as much as before").  The ALJ also acknowledged that despite the improvement, Plaintiff continued to report not wanting to go outside, increased anxiety when in public, and generally avoiding public places.  AR 23.  As discussed above, the ALJ accounted for these symptoms in the RFC, limiting Plaintiff to a static work environment, which would stay the same from day-to-day regarding tasks to be performed as well as the physical

surroundings, and only requiring occasional teamwork or contact with the public, but no requirement that she interact with the public in any way to complete a work task.  AR 20.

Third, the ALJ considered inconsistencies in Plaintiff's testimony and statements, particularly with respect to caring for her children, ages, 5, 13, 15, and 20.  AR 21.  For example, the ALJ noted Plaintiff's allegation that her husband helped care for the kids and herself (AR 21, citing AR 222), but when asked about her husband's work schedule at the hearing, Plaintiff testified that her husband worked full time (AR 37-38).  AR 21.  Plaintiff then testified that her daughter (in-law) assisted her with caring for the children.  AR 21, 37, 41-42.  She later admitted, however, that her daughter (in-law) also cared for a three-month-old baby.  AR 21, 43.  When asked how her daughter (in-law) was able to care for her new baby and Plaintiff's children, Plaintiff added that her son helped.  AR 21 (identifying 15-year-old son), 43-44 ("my 13-year-old, he helps me . . . a lot with my kids").  An ALJ may employ ordinary techniques of credibility evaluation, such as considering claimant's inconsistent statements and other testimony by the claimant that appears less than candid. *See*, *e.g.*, *Moreno v. Comm'r of Soc. Sec.*, No. 1:19-cv-01580-SAB, 2021 WL 84376, at *6 (E.D. Cal. Jan. 11, 2021) (citations omitted). Indeed, inconsistencies between a claimant's testimony and conduct, or internal contradictions in the claimant's testimony, are relevant in evaluating subjective symptom testimony. *See Taylor v. Kijakazi*, No. 1:22-cv-00215-BAM, 2023 WL 7024351, at *9 (E.D. Cal. Oct. 25, 2023); *Bradley P v. Kijakazi*, No. EDCV 21-00298-AS, 2022 WL 5048317, at *4 (C.D. Cal. Mar. 24, 2022), citing *Burrell v. Colvin*, 775 F.3d 1133, 1137 (9th Cir. 2014).

Even if one of the reasons for discounting Plaintiff's subjective complaints was invalid, any such error is harmless because the ALJ provided other valid reasons for discounting Plaintiff's subjective testimony. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161-63 (9th Cir. 2008) (finding that two invalid reasons to reject a claimant's testimony were harmless error where the ALJ articulated two other reasons supported by substantial evidence in the record); *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) ("several of our cases have held that an ALJ's error was harmless where the ALJ provided one or more invalid reasons for disbelieving a claimant's testimony, but also provided valid reasons that were supported by the record").

///

## CONCLUSION AND RECOMMENDATION

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards.  Accordingly, IT IS HEREBY RECOMMENDED as follows:

1. Plaintiff's motion for summary judgment (Doc. 20) be denied;

2. The Commissioner's request to affirm the agency's decision (Doc. 24) be granted; and

3. The Clerk of the Court be directed to enter judgment in favor of Defendant Martin O'Malley, Commissioner of Social Security, and against Plaintiff Rosa Isela Rivera.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, as required by 28 U.S.C. § 636(b)(l).  Within **fourteen (14) days** after being served with these findings and recommendations, the parties may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that the failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).


IT IS SO ORDERED.

Dated:   __July 19, 2024__          _____/s/ Barbara A. McAuliffe_____
                                    UNITED STATES MAGISTRATE JUDGE

14